We'll move now to our third case. What advice would you give to a former sentencing commissioner? I will neither confirm nor deny whether I knew that. Baines v. City of Atlanta, Miss LaGarde Good morning, Your Honors, and may it please the Court. My name is Cheryl LeGre and I represent Ms. Baines in this matter. The question today is how far will lower courts allow defendants like the City of Atlanta and Ms. Shahar go before a plaintiff like Ms. Baines can hold them accountable? In other words, when is enough enough? Your Honors, the lower court granted summary judgment in this case to the City of Atlanta and Ms. Shahar despite overwhelming evidence that a jury could have concluded that Ms. Baines' constitutional and statutory rights were violated. Beginning in January 2016 and continuing throughout 2017, Ms. Baines was sexually harassed by Robin Shahar, the defendant here, one of the defendants here, and Myesha Rashad and Keisha Burnett. The stalking and cyber-stalking continued throughout 2017. I think one of the main issues in the case is does the Supreme Court's decision in Muldrow versus the City of St. Louis change the landscape for sexual harassment claims where a tangible employment action is alleged? And we think that it does, Your Honor. For instance, Ms. Shahar, on December 6, 2016, summoned Ms. Baines into her office, sexually propositioned her, told Ms. Baines that she knew what Ms. Rashad and Ms. Burnett were doing to her on the Internet, cyber-stalking her, told her she could make it all go away. And when Ms. Baines asked, well, what do I need to do? Ms. Shahar said, you know. No, Your Honor, and for several reasons as to both. But let's start with Ms. Shahar. Ms. Shahar then tried to impede Ms. Baines meeting with Human Resources, but Ms. Baines did meet with Human Resources and told Ms. Jantzi about the sexual harassment and stalking. That was December 6. On December 6, Ms. Shahar told the police, falsely, that Ms. Baines was going to buy a gun and kill herself. Then, in January 2017, after January 15, 2017, Ms. Shahar engaged in tangible employment actions against Ms. Baines due to her rejection of Ms. Shahar's advances. For example, Ms. Shahar removed Ms. Baines from a case on January 18, 2017, in which Ms. Baines was lead counsel. Ms. Shahar again on February 9 did the same thing. She was on leave, but it is not normal to remove people from cases just because they're on medical leave. And when I say remove, it's important. Filing a withdrawal in the court. We cover for our co-workers when they're on medical leave. We don't withdraw them from cases. And so she withdrew her, and of course, Ms. Baines is sitting at home finding out she's being withdrawn from cases, thinking she's being terminated because she rejected Ms. Shahar's advances. But that's not the same type of conduct as the hostile work environment harassment that occurred on December 6. Withdrawing an employee on extended medical leave from active cases is hardly the same kind of discriminatory intimidation, ridicule, insult, sufficiently severe or pervasive to create an abusive environment. So it just, this doesn't tie up to extend the statute of limitations, it seems to me. Your Honor, respectfully, I have to disagree with that. This is a tangible employment act by a supervisor against It can't be the same type of conduct. No, it's your She's going to sue about what happened on December the 6th. What happened on January 15th is completely different. But it's not, Your Honor. It's a tangible employment action taken against Ms. Baines by Ms. Shahar because she rejected her advances. It's Ms. Baines exerting That's different than conduct within the workplace, right? Maybe that would be a good basis for a retaliation claim, say. But I'm with Chief Judge Pryor. It seems very different than the type of conduct that you've alleged that happened within the office. Your Honor, the issue is, did Ms. Baines suffer a tangible employment action at the hands of Ms. Shahar because she rejected her advances? It's not different. It's all one conduct for a hostile work environment that results in a tangible employment action because you rejected the advances. Withdrawing her from the cases. Forcing her to work while on medical leave. Under Muldrow, that is absolutely an adverse employment action. And then her being sent to a fit-for-duty based on the word of Ms. Shahar. All of those are tangible employment actions in the statute of limitations. And they are connected. Had Ms. Baines not rejected Ms. Shahar's sexual advances, none of that ever would have happened. Never would have happened. It is all related. And as to the city, the city admits they signed a tolling agreement, tolling the statute of limitations. There's no statute of limitations at all with respect to the city. And I can point the Court to the docket sites. Docket 315, page 10 and 11. And in their answer, they admitted that they signed a tolling agreement. In response to the objections that we filed, they admitted they signed a tolling agreement. There's no statute of limitations issue with respect to the city. Ms. Shahar could have at any point stopped the stalking by Ms. Rashad. She told Ms. Baines she could. She didn't do that. And that continued throughout 2017. Ms. Shahar, again, made her work while on medical leave in 2017 because she rejected her advances. Ms. Baines wouldn't have been on medical leave at all if Ms. Shahar had not been sexually harassing her. How is it that that's not all connected, all one, under the sexual harassment case law? Do you dispute that City Attorney Berry made the decision to terminate Baines' employment and that his decision to do so is based on her external practice of law? I do dispute that for a few reasons. Number one, Mr. Berry testified that he did that at the direction of Mr. Gewerks, the outside counsel for the city. And in docket 21-2, page 9, which is the ammunition email, on February 23rd, 2017, Mr. Gewerks wrote to Kimberly Patrick and Ty White and Kathy Hampton, the city attorney. The third is whether Tamara's interpersonal challenges have changed at all. Rather than speak with Jones or wait to make a decision on her anticipated return, she wants to pull the trigger. This is not a good sign of things to come. It may also give us additional ammunition for requesting a release along the lines that Yvonne suggests. Yvonne is Yvonne Yancey, the Commissioner of Human Resources. Kathy Hampton is the city attorney. Outside counsel was assisting and saying, let's get ammunition to terminate Ms. Baines. That's direct evidence of both retaliation and tangible employment action related to the sexual harassment of which they all knew. Could it also be that they were concerned about her fitness for duty and this was yet another reason that she wouldn't be able to perform the job that she had broken these city regulations in terms of having an outside practice? She didn't violate the city policy on outside law because she wasn't a city attorney at the time that she assisted the pro bono client. She was on medical leave and had explicitly been told she hadn't been reinstated to her city attorney position. I had the image it was wrong to take her off of cases, that she should still be on briefs for the city and listed as counsel for the city, but now you're saying she wasn't a city attorney, so I'm not sure which one it was. As of the fit for duty coming in, she was explicitly told you are not a city attorney. So that was in May of 2017. She was explicitly told you are not. Being on leave, but still and not an employee. I'm not saying she wasn't still an employee of the city at that point. She was not. If she was not an employee, what was her employment status? Her employment status was in limbo while she got her second opinion. If she was an employee, it was only an employee as an attorney. That's actually not true. She was told explicitly you will not be an assistant. She wasn't an attorney. She wasn't anything at that point. They told her they were going to move her. She was an employee of the city. We don't know because we didn't get that far. She was terminated. It sounds like she was an attorney on leave. It sounds like that's the employee category that she was. She was told she would no longer be a senior assistant city attorney. That she was going to have to change jobs because of the fit for duty exam. So she wasn't a senior assistant city attorney subject to that policy. But she had not been included in a different job. Because she requested a second opinion. And it was on leave. She was on leave. No, actually they told her. She has explicitly been told. She's been told that she's never being returned to her attorney position. I think a jury could conclude from that. That she was not employed as a city attorney. But more importantly, much more importantly. They were looking for any excuse to terminate her at that point. Going back to the ammunition email on February 23rd. Let's find ammunition. Let's get rid of her. There was never any intention that she come back. Just look at all the information they provided to the fit for duty provider. Your honor, my time is up. Good morning, your honors. May it please the court. My name is Diana Suber. I'm here with my co-counsel Jamala McFadden. And together we represent the city of Atlanta. I just want to clarify for the record. Based on Ms. Legree's last statement regarding the leave policy. And it not being violated with the outside employment. The policy was actually a citywide policy that applied to all city employees. It was not just the city of the law department. It was to all employees. And essentially all employees must have prior permission before they have an outside job. And that applied to the law department. And Ms. Baines did violate that policy in as much as she did not have prior permission to perform that job. And also in that code there is some language in terms of even if you're on leave. Sometimes you can't be on paid leave and have an outside job. So there were violations of that policy. Jeremy Berry did terminate Ms. Baines on that basis. He did not have any prior knowledge about things that happened in December of 2016. He had only been in that role from May 17. The city had a reason for terminating her. And she failed to establish that it was pretextual. That would bar her ADA claim. Her ADA discrimination claim. Her medical leave act claim. Her Title VII retaliation claim. Is that right? That's correct. Yes. And I would also just emphasize that the district court didn't actually make any rulings on the merits as to any of the sexual harassment allegations. Those allegations were barred by technicalities. Sexual limitations. Failure to exhaust. These neutral reasons. Although I think what we just talked about is actually a merits case. It is. And you're right. It would cover all the things in terms of, you know, that is the adverse action. We respectfully disagree with Ms. LaGrie that the, you know, being subject to a fitness for duty exam would be an adverse action or there's any forced punitive nature to that. You know, it was very clear that in December 2016, Ms. Baines had a mental health crisis. The city, you know, agreed to put her on leave. Given the nature of that crisis, the city was not amenable to having her come back without that fitness for duty. Mostly because of safety concerns. You know, she had threatened to shoot herself. That's a very serious, you know, circumstance. And the city had a right to protect Ms. Baines as well as the other workers. So in that sense, the city, the district court got it right in terms of, you know, there's no ADA violation. There's no FMLA violation with requiring those fitness for duty exams. What's your response to the argument about the tolling agreement for the city on the 1983 claim? I saw that was raised in the gray, responded to in the gray brief. What's your response to that? Did that tolling agreement exist? Okay. There was a tolling agreement. However, the tolling agreement as it relates to this claim would only have covered the Section 1983 claims. There was no tolling agreement as to Title VII. And honestly, you know, our firm inherited this case sort of late in discovery. And honestly, we didn't quite know about the tolling agreement. But it does exist. The cut to the chase is, you know. I think it's still barred because honestly Ms. If it's the subject of the tolling agreement. Well, I think, quite honestly, Ms. Baines abandoned that benefit of the tolling agreement in as much as she did not raise it during the summary judgment. She did not raise it until the objections to the magistrate report. By that time, the magistrate had made its decision, right? But the district court ultimately decided that particular claim on Monell grounds. Which she does. The district court made something of the tolling agreement. I'm not sure how many would do that. Well, and then I guess then our other ground is that regardless of the tolling agreement, the Section 1983 grounds are not viable because there's no policy at the City of Atlanta that says sexual harassment is okay. There's nobody. That's what you have to show in terms of making that Section 1983 claim. Or you have to say that there's a top policymaker, not a top decision maker, but a top policymaker out there who basically has okayed sexual harassment. And that is just not supported by the facts in this case. So I think in that case, we're just not viable. And I believe probably the best authority for that is probably, I think it's Oliveria. In Monell as well. Oliveria versus the City of Atlanta, Georgia. And basically that's sort of the same thing. You have to show there's a policy the City doesn't have. The City has an anti-sexual harassment policy. And the City doesn't have anybody going around advocating for people to be sexually harassed. She did not. And the only other person arguably who had a sexual harassment claim was the other alleged victim maybe in the scenario, which was Myisha Rashad who made allegations against Ms. Baines. And in that sense, it was sort of a she said, she said story where the City's resolution was basically to separate these two individuals. But that went sideways when Ms. Baines confronted her. And that kind of triggered everything now that we're here on today. Lastly, and I just want to raise, and it's something that we briefly cited. The City, it's the City's position that this case may not be properly before the court on a jurisdictional basis. I think you're just wrong about that. You're talking about whether we have, whether this is a final order. Right. I do want to suggest that maybe a step was missed in terms of when the case went back down from the second appeal and Ms. Baines did file her amended motion, an amended appeal and filed the appeal. I do think there is a step where a district court has to, even if it's just a rubber stamp, you know, say that, you know, this is, the case is now final. This case actually wouldn't. It already entered a final judgment. Which this court actually says was not final in the first appeal. Because of. Because of the one outstanding claim. It's been eliminated. Right. But I still think there is some concern that that could go by the wayside. Okay. And then I will, if there are no other questions, I will step aside. Thank you. Thank you, Ms. Zuber. Thank you. Good morning, Your Honors. Mr. Gerberts and my colleagues who are not here with me on behalf of Ms. Shahar. Ms. Shahar is a leading luminary in the legal profession within this city and specifically within the area that she occupied with respect to LGBTQ rights. It pains her to have to rely on a statute of limitations argument alone. But that is the argument that was presented to the district court and the argument that we believe ought to be affirmed. I need hardly remind the court that statutes of limitations are extraordinarily important. They promote the fair administration of justice. They prevent surprise. They provide defendants with certainty. And they relieve the courts of trying stale claims. In this case. I know that the court knows that there should be no pain or shame in relying upon the law. I appreciate those words, Your Honor. In this case, while the parties don't agree on much, they do agree that there is a two-year statute of limitations that applies to Section 1983 causes of action against Ms. Shahar. Further, that that is a two-year period that is set under state law. And as a consequence and in response to the questions by Judge Grant, the last contact whatsoever between Ms. Shahar and Ms. Baines was on December 6th of 2016. There were no written communications between them thereafter. There were no oral communications. There was no metaphysical communications between them whatsoever. And so. That's exactly right, Your Honor. And so as a consequence, the only way to resuscitate the stale causes of action against Ms. Shahar are to find one of two arguments that Ms. Baines advances. The first, and the one that the court has spent the most time on thus far, is the notion that the things that happened after that time were sufficiently related to the sexual harassment alleged touching by Ms. Shahar in order to constitute one act of ongoing harassment. That doesn't work for several reasons, Your Honor. The first is those causes of act, those events were repeatedly characterized by Ms. Baines throughout the litigation and the briefing as retaliatory acts, not acts of sexual harassment. And as the court is well aware, Section 1983 does not allow causes of action for retaliation. That is not a violation of the Equal Protection Act. Second, even if the court were to examine the six discrete events that Ms. Baines alleges Ms. Shahar was behind after December 6th, the uncontroverted record demonstrates that Ms. Shahar had no involvement whatsoever with five of them. And Ms. Baines does not contest that. In fact, when pressed to that proof twice during her deposition, she said that she couldn't recall why she believed that Ms. Shahar was behind five of them. The only event that Ms. Shahar had any hand in was, as the court is aware, the withdrawal of Ms. Baines on two different federal court cases while she was out on a leave of absence. Let me point out that not only does not rise to the level of a tangible act, even under the expanded definition under Mottro, it is in fact required under the local rules that you make sure that you have active attorneys who can be reached by the court, by opposing counsel, or in fact by their own clients during that time. It is not inappropriate. It is not tangible. It certainly is not sexual or harassing. I have to tell you, I have been irritated when counsel has some kind of emergency that prohibits them a week or more ahead of time from presenting an oral argument, but they have co-counsel listed and they don't offer any explanation for why they can't do it. So keeping the record clear as to who is actually available to act as counsel at times for the court is, I think, very important. Thank you, Your Honor. Additionally, Ms. Shahar was directed to do that by the Deputy City Attorney. With the 30 seconds I have left, the second argument, which is a Hail Mary, is this concept of equitable tolling. I will point out that there were two complaints, an initial and amended complaint, neither of them mentioned equitable tolling. There was two motions for judgment on the pleadings by Ms. Shahar on the statute of limitations. In response, Ms. Baines never mentioned equitable tolling. Even at summary judgment, we didn't get a self-serving declaration to that point. It was only after a recommendation of report was entered by the magistrate judge. Further, there are high standards that are set out. I'm out of time. But that demonstrates that Ms. Baines could not meet the Georgia law for equitable tolling. If there are no further questions, thank you, Your Honors. This is great. You have five minutes. Trying to figure out what order to even attack these in. One of the things I want to talk about is Ms. Shahar's conduct, the adverse actions in 2017, as recognized by the District Court. It is disputed who directed Ms. Baines to work. Ms. Hofler's testimony is that Ms. Shahar was directing her to perform work while on FMLA leave. Another thing that ties it back into all of the context and cumulative harassing conduct is that the touching occurred in Ms. Shahar's office at Ms. Shahar's direction, even when Ms. Baines asked not to have to meet with her alone. Ms. Hampton said, nope, Ms. Shahar wants you to meet with her alone, so meet with her alone. But the activity that occurs in January or afterward is of that type. It is, Your Honor. It's exerting power. It's exerting control. It's saying, here I am. I am the person who controls your employment. If you come back, you will have to work with me. I'm taking you off cases so that you feel like you're going to be terminated. That is an exertion of power and control. Was Ms. Shahar on the cases that your client was taken off of? She entered an appearance on the cases and then later took my client off. So I guess I'm still having trouble understanding if the argument is, it's a threat that you're going to have to work on cases with me, but also I'm going to penalize you by taking you off cases that I'm on. I don't understand that argument. Judge Grant, this is what the argument boils down to. First of all, I recognize, Judge Pryor, what you're saying about the court wanting to know who's on a case. We file leaves of absence. We don't file withdrawals. In district court, it happens all the time. We file leaves of absence. That's the rule. You file a leave of absence if you have to be absent for medical reasons. You're not withdrawn from the case. It's not that easy to withdraw people from cases in district court. But second of all, Judge Grant, I want to go to your question. The issue is, is the sexual harasser exerting power and control over the person who is being sexually harassed? And that's what was happening here. It's like, I can play with you while you're on leave, right? You're on medical leave, but I'm going to make you work. You're on medical leave, but I'm going to show you that, oh, look, right before you're supposed to come back for leave, I'm taking you off cases. You feel like you're going to be fired. And what do you know? She wasn't allowed to come back to work. A jury could conclude that. A jury could absolutely conclude that. And for those reasons, the claims against Ms. Shahar are timely. But not only that, she said, I'll stop the other harassment against you if you succumb to my advances. Ms. Baines rejected her advances. She didn't stop the harassment for Mr. Schott and Ms. Burnett. That continued through 2017. And I want to go to Manel, too. Griffin v. The City of Opa-Rata says, a municipality's failure to correct constitutionally offensive actions of its employees can rise to the level of a custom or policy under Manel if the municipality tacitly authorizes these actions or displays deliberate indifference. Here they did. They tried to say that Ms. Baines was the harasser here and the abuser here when they knew. And Commissioner Yancey admits they knew. But both. As Ms. Huber said, she said, she said. But they're targeting Ms. Baines. Sending Ms. Baines for a fit-for-duty. They didn't send Robin Shahar for a fit-for-duty. They didn't send Maisha Rashad for a fit-for-duty when they were accused of sexual harassment. Ms. Baines' fit-for-duty was not because of the accusation of sexual harassment. It was because of the concerning mental episode that potentially referenced self-harm or harm of others. Isn't that correct? It's not, actually. There's nothing in any document until she's told she's being sent for a fit. There's actually nothing about it in that. There's nothing in the fit-for-duty provider reports that talk about self-harm at all. And what the fit-for-duty provider founded, which frankly is what then culminated the sexually hostile work environment, was she can work as a lawyer. She just can't work as a lawyer in the law department because the environment's not going to change. Meaning they're not going to stop the hostile work environment. And you've got the Commissioner of Human Resources. The mayor is the person who recommended outside counsel be retained. The mayor. So you've got the mayor, the Commissioner of Human Resources, the Chief Legal Officer, all knowing that all of this harassment is going on, not just by Ms. Shahar but also by Ms. Rashad, and doing nothing to stop it. Nothing. Totally in violation of their policy. Okay, that's great. I think we have your case. We've got two more we're going to hear, but we're going to take a short break. We'll come back at a later date. All rise.